UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

JING LIN,

Petitioner,

-against-

KENNETH GENALO, Field Office Director of New York Immigration and Customs Enforcement; TODD LYONS, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Acting Attorney General of the United States,

Respondents.
----------------------------------------------------X

Civil Action No.
26-CV-2536

(Brown, J.)

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE WRIT OF HABEAS CORPUS**

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

Alina Austin
Special Assistant U.S. Attorney
(Of Counsel)

May 29, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 3

I. STATUTORY BACKGROUND ..... 3

II. PETITIONER IS DETAINED UNDER 8 U.S.C. § 1226(c)(1)(E) ..... 4

III. PETITIONER'S DETENTION COMPORTS WITH PROCEDURAL DUE PROCESS ..... 6

A. Even Considering the *Mathews* Factors, Petitioner's Detention Comports With Due Process ..... 7

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

## Federal Cases

*Black v. Decker*,
103 F.4th 133 (2d Cir. 2024) ........ *passim*

*Calderon v. Noem*,
2025 WL 3754042 (W.D. Wash. Dec. 29, 2025) ........ 8

*Da Cunha v. Freden*,
175 F.4th 61 (2d Cir. 2026) ........ 1

*Demore v. Kim*,
538 U.S. 510 (2003) ........ 7, 9

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........ 4, 6

*Landon v. Plasencia*,
459 U.S. 21 (1982) ........ 9

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........ 7

*Matter of Joseph*,
22 I. & N. Dec. 799 (BIA 1999) ........ 8

*McQueen v. City of New York*,
No. 20-CV-4879, 2023 WL 1995017 (E.D.N.Y. Feb. 14, 2023) ........ 6

*Panetta v. Crowley*,
460 F.3d 388 (2d Cir. 2006) ........ 6

*Rodriguez Diaz v. Garland*,
53 F.4th 1189 (9th Cir. 2022) ........ 9

*Rohit Lnu v. Chestnut*,
2026 WL 395882 (E.D. Cal. Feb. 12, 2026) ........ 5

*Sidqui v. Almodovar*,
2026 WL 251929 (S.D.N.Y. Jan. 30, 2026) ........ 6

**Federal Statutes**

8 U.S.C. § 1225(b) .......... 1, 7

8 U.S.C. § 1225(b)(2)(A) .......... 1

8 U.S.C. § 1226(a) .......... 1, 6, 7

8 U.S.C. § 1226(c) .......... 4, 6, 7

8 U.S.C. § 1226(c)(a) .......... 7

8 U.S.C. § 1226(c)(1)(E) .......... *passim*

8 U.S.C. § 1226(c)(2) .......... 5

8 U.S.C. § 1226(c)(3) .......... 5, 6, 7

8 U.S.C. § 1226(c)(4) .......... 4, 5, 6

8 U.S.C. § 1252(a) .......... 4

8 U.S.C. § 1182 .......... 4

8 U.S.C. § 1182(a)(6)(A) .......... 4, 5

8 U.S.C. § 1182(a)(6)(C) .......... 4

**State Statutes**

New York State Criminal Procedure Law § 150.20(1)(a) .......... 6

New York State Penal Law § 155.35 .......... 2

**Other Authorities**

Pub. L. No. 104-208 § 302 .......... 3

Pub. L. No. 104-208 § 303 .......... 4

Pub. L. No. 119-1 .......... 4

## PRELIMINARY STATEMENT

Respondents respectfully submit this memorandum of law in opposition to the Petition for Writ of Habeas Corpus (Docket Entry ("DE") #1) and in response to the Court's Orders dated April 29 and 30, 2026 directing that Respondents to file its full response to the petition within 30 days following the determination of detention[1], including "legal and factual substantive opposition to the petition, which would include the factual bases for Petitioner's arrest."

Petitioner Jing Lin ("Petitioner") filed a petition for habeas corpus alleging that his detention by Immigration and Customs Enforcement ("ICE") is unlawful because detention is based on 8 U.S.C. § 1226(a), in violation of the Immigration and Nationality Act ("INA") and his Fifth Amendment constitutional right to substantive and procedural due process. DE #1, Claims for Relief ¶¶ 30-41; Prayer for Relief ¶ 3. Petitioner alleges that on April 28, 2026, after his arrest by police officers and subsequent release, he was approached and detained by ICE pursuant to 8 U.S.C. § 1225(b). *Id.* at ¶¶ 3-7. Petitioner alleges that he is subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) rather than mandatory detention under 8 U.S.C. § 1225(b) because of the recent Second Circuit decision in *Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), that held that 8 U.S.C. § 1225(b)(2)(A) does not apply to aliens who are present in the United States after entering the country without inspection and admission, and who were not apprehended at or near the border at the time of entry, like Petitioner here, but rather under 8 U.S.C. § 1226(a) applies. *Id.* at ¶ 7.

Petitioner's reliance on *Da Cunha* is mistaken because the analysis is not applicable in this case since Petitioner is subject to the mandatory detention authority found in 8 U.S.C.

---

[1] On April 30, 2026, Your Honor declined to hold a bail hearing. *See* Docket Entry dated April 30, 2026.

§ 1226(c)(1)(E)[2]. And as such, Petitioner is not entitled to a pre-deprivation assessment. Second Circuit precedent, *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), *rehearing en banc denied*, 156 F.4th 171 (2d Cir. 2025), *cert petition filed*, No. 25-886 (Jan. 22, 2026), forecloses Petitioner's claim. His habeas petition should, therefore, be denied.

## STATEMENT OF FACTS

Petitioner entered the United States at an unknown time and place from China without being admitted, paroled or inspected[3]. *See* Declaration of Demetrios Costakis ("Decl. Costakis") at ¶ 4. On July 30, 2019, Petitioner was served with a Notice to Appear ("NTA") and placed in removal proceedings pursuant to the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id.* at ¶ 6. On August 27, 2019, Petitioner and his attorney appeared for an initial master calendar hearing, where the immigration judge sustained the charge of removability and scheduled a master calendar hearing on February 22, 2024, which was later rescheduled to May 26, 2026. *Id.* at ¶¶ 7; 17. On April 28, 2026, at approximately 12:26 p.m., Petitioner was arrested by the Freeport Police Department ("FPD") for a charge of Grand Larceny in the Third Degree, a Class D felony, in violation of New York State Penal Law § 155.35. *Id.* at ¶ 9. The FPD issued a desk appearance ticket ("DAT") in connection with the charge, which directed Petitioner to appear at the First District Court in the County of Nassau, Arraignment Part located at 99 Main Street in

---

[2] Petitioner does not address the merits of detention pursuant to 8 U.S.C. § 1226(c)(1)(E) in his Petition, but challenges the basis for detention in his letter response dated April 30, 2026 (DE #8) to Respondents' letter in response to the Court's Order to Show Cause (DE #7).

[3] According to the Petition, Petitioner "entered the United States on or about July 6, 2018 without having been paroled or admitted." DE #1 ¶ 1.

Hempstead, New York on May 15, 2026. *Id.* On the same date, at approximately 4:00 p.m., ICE Officers were notified by the FPD that Petitioner was detained at the precinct. *Id.* at ¶ 10. After running several records checks, ICE confirmed Petitioner's identity and determined that Petitioner had no lawful status in the United States and they developed probable cause to arrest Petitioner. *Id.* at ¶¶ 10-11. On the same date, prior to Petitioner's arrest, ICE officers issued the Warrant for Arrest and arrested the Petitioner, who was then transferred to ICE custody. *Id.* at ¶¶ 11-13. On the same date, Petitioner was transported and processed at East Meadow, New York and then transported to Nassau County Correctional Center, where he was detained until April 30, 2026. *Id.* at ¶¶ 13-14. On April 30, 2026, Petitioner was transferred to the Brooklyn Metropolitan Detention Center, where he remains in custody pursuant to INA § 236(c)(1)(E)(ii), 8 U.S.C. § 1226(c)(1)(E)(ii). *Id.* at ¶ 15. On May 26, 2026, Petitioner appeared for the master calendar hearing before the immigration judge, where Petitioner's counsel requested an adjournment of the merits hearing, which is now scheduled for June 22, 2026. *Id.* at ¶ 18.

In Petitioner's letter in response to Defendants' response letter to the Court's Order to Show Cause, Petitioner did not dispute that he was arrested for grand larceny but rather questioned "whether the conduct underlying the arrest constitutes the essential elements of a qualifying offense." DE #8 at ¶ 2. Alternatively, Petitioner argues that, even if the Court finds that the arrest was valid, the issuance of the DAT does not qualify as an offense that invokes mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(E). *See id.* at ¶¶ 3-4.

## ARGUMENT

### I. STATUTORY BACKGROUND

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208 § 302, div. C, 110 Stat. 3009-546 (1996). Congress through IIRIRA, also streamlined the detention authorities covering aliens with certain criminal

records, amending 8 U.S.C. § 1226(c) to replace the former 8 U.S.C. § 1252(a) and § 1226(e). *See* Pub. L. No. 104-208 § 303. Under § 1226(c), the Executive "shall take into custody any alien who" "committed" certain offenses enumerated in 8 U.S.C. §§ 1182 and 1227 or engaged in terrorism-related activities. *See* 8 U.S.C. § 1226(c)(1)(A)-(D). For them, there is no humanitarian parole option under § 1252(d)(5). Rather, Congress permitted release only if the Department of Homeland Security ("DHS") determines it "is necessary" to protect certain witnesses to criminal activity and if the alien "will not pose a danger" to public safety and is not a flight risk. 8 U.S.C. § 1226(c)(4); *Jennings v. Rodriguez,* 583 U.S. 281, 289 (2018).

The Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (Jan. 29, 2025), added to § 1226(c)(1), categories of covered aliens for whom "custody" is mandatory. Under 8 U.S.C. § 1226(c)(1)(E), custody is mandated over an alien who is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C) or 1182(a)(7) and "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Like subsection (c)(1)(A)-(D) aliens, subsection (c)(1)(E) aliens are ineligible for parole under § 1252(d)(5) and may only be released for the reasons in § 1226(c)(4).

## II. PETITIONER IS DETAINED UNDER 8 U.S.C. § 1226(c)(1)(E)

Detainees under 8 U.S.C. § 1226(c)(1)(E) must remain detained for the duration of their removal proceedings without access to a bond hearing, and they may only be released if one of the limited, enumerated circumstances in 8 U.S.C. § 1226(c)(4) are satisfied, which are not present here.

The detention authority in 8 U.S.C. § 1226(c)(1)(E) covers "any alien who-- . . . (i) is inadmissible under [8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7)]; and is charged with, is arrested for,

is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any . . . larceny." "[T]he term[] . . . 'larceny' . . . ha[s] the meaning[] given such term[] in the jurisdiction in which the act[] occurred." *See* 8 U.S.C. § 1226(c)(2). The Executive "shall take into custody" such aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." *See* 8 U.S.C. § 1226(c)(1)(E).

A detainee under § 1226(c)(1) "may" be released "only if . . . release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *See* 8 U.S.C. § 1226(c)(4). None of these possible release scenarios are present here.

Here, it is undisputed that Petitioner is an alien inadmissible under 8 U.S.C. § 1182(a)(6)(A) and (a)(7). Petitioner was arrested on a formal charge of third-degree grand larceny, a class D-felony, and was given a DAT to appear for arraignment on May 15, 2026. *See* Decl. Costakis, Exhibit C. His charge for grand larceny is a textual match for a covered crime and the charges remain pending. *See Rohit Lnu v. Chestnut*, 2026 WL 395882, at *4 (E.D. Cal. Feb. 12, 2026) (collecting cases "constru[ing] the Laken Riley Act to apply only where an individual is currently charged with or arrested for the enumerated crimes.") *report and recommendation adopted*, 2026 WL 623148 (E.D. Cal. Mar. 5, 2026).[4] Thus, Petitioner is subject to the detention authority in 8 U.S.C. § 1226(c)(1)(E).

---

[4] Some courts have held that § 1226(c)(1)(E) does not apply where covered charges were dropped by the time the petitioner was detained. *See, e.g., Sidqui v. Almodovar*, 2026 WL 251929, at *12 (S.D.N.Y. Jan. 30, 2026).

Pursuant to New York State Law, as part of bail reform legislation, it is "mandatory for police to issue a DAT for certain misdemeanors and infractions, as opposed to detaining a suspect prior to arraignment." *McQueen v. City of New York*, No. 20-CV-4879, 2023 WL 1995017, at *1 (E.D.N.Y. Feb. 14, 2023)(Cogan, J.), citing, New York State Criminal Procedure Law § 150.20(1)(a) ("Whenever a police officer is authorized ... to arrest a person without a warrant for an offense other than [certain felonies or violations] ... he *shall*, except as set out in paragraph (b) of this subdivision ... instead issue to and serve upon such person an appearance ticket.") (emphasis added). The issuance of a DAT is considered to be a non-custodial arrest. *See Panetta v. Crowley*, 460 F.3d 388, 392 (2d Cir. 2006).

Petitioner is not entitled to a bond hearing under § 1226(c). As § 1226(a) confirms, its bond procedures apply "[e]xcept as provided in subsection (c)." *See* 8 U.S.C. § 1226(a). Rather, for Petitioner, he may be released only for the reasons enumerated in 8 U.S.C. § 1226(c)(4). In *Black*, the Second Circuit, in reaching the question of how long aliens may be detained under § 1226(c) without further process, concluded that "noncitizens who have committed one of certain listed offenses . . . are subject to mandatory detention." *See* 103 F.4th at 140-41. "The 'Attorney General *shall* take into custody' any such noncitizen." *Id.* at 141. Their release is "allow[ed] . . . in extremely limited circumstances: only" under the provision now codified at 8 U.S.C. § 1226(c)(4). *Id.* Such detention "*must* continue 'pending a decision on whether the alien is to be removed from the United States." *Id.* at 142 (citing *Jennings*, 583 U.S. at 303).

## III. PETITIONER'S DETENTION COMPORTS WITH PROCEDURAL DUE PROCESS

Petitioner alleges that he was denied due process because he was arrested pursuant to 8 U.S.C. § 1225(b) by ICE without a custody determination and that under *Da Cunha* he should be considered to be detained under 8 U.S.C. § 1226(a), which entitles him to a pre-deprivation

bond hearing. DE #1 at ¶¶ 31- 33. Petitioner further alleges that the Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "to consider in determining if government action deprives an individual's Fifth Amendment right to procedural due process or whether the government process is constitutionally adequate." DE #1 at ¶¶ 36-38. Contrary to Petitioner's misplaced arguments, Petitioner's detention is valid pursuant to 8 U.S.C. § 1226(c) as previously discussed *supra*. Therefore, the analysis under *Black v. Decker* applies in discussing the Government's detention authority under 8 U.S.C. § 1226(c) where the Second Circuit summarized United States Supreme Court precedent holding that "detention under [§] 1226(c) without an *initial* bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" *See* 103 F. 4th at 141 (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)). In reaching that conclusion, *Black* cited *Demore*, in which the Supreme Court upheld § 1226(c) detention without applying the *Mathews* framework. *See id.*

"Due process does not require an initial bond determination for those detained under section 1226(c) . . . and [] section 1226's text cannot be construed to require a bond hearing after any particular fixed period of detention." *Black*, 103 F.4th at143. Section 1226(c) thus contains no fixed temporal limitation and authorizes detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(c)(a). Here, Petitioner is currently in removal proceedings and is scheduled for a merits hearing in June of 2026 before an immigration judge and is subject to detention until the decision about his removability is determined.

A. <u>Even Considering the *Mathews* Factors, Petitioner's Detention Comports With Due Process</u>

The Supreme Court in *Mathews* identified three factors bearing on the constitutional need for procedural protections: (1) "the private interest that will be affected by the official action"; (2)

"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See Black*, 103 F.4th at 147.

The risk of erroneously depriving Petitioner of his liberty because he has yet to have access to a bond hearing is low. Petitioner cannot seriously dispute that his pending third degree grand larceny charge is not a covered crime and covered posture under § 1226(c)(1)(E); if he did, he immediately has available to him a *Joseph*[5] hearing; and if he remains detained for a "prolonged" time on the present posture, he may seek habeas relief at that later juncture under *Black*, arguing that his detention has become "prolonged" and the lack of a bond hearing by that time violates due process. *See Calderon v. Noem*, 2025 WL 3754042, at *8 (W.D. Wash. Dec. 29, 2025) (denying habeas petition where the LRA "undisputed[ly]" applied, Petitioner could seek relief under *Joseph*, and a bond hearing could be available at a later date under *Black*). There is, therefore, little to no risk Petitioner's liberty is presently erroneously deprived now.

With respect to the third factor, in considering Government's interest in detaining Petitioner, the government's interest is in ensuring Petitioner's appearance at his removal proceedings to properly adjudicate his removal, and ensure he is removed if that is the outcome of his removal proceedings. Such "interests are legitimate and their importance well-established." *See Black*, 103 F.4th at 153 (citing *Demore*, 538 U.S. at 518-521); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (the government "has a strong interest in preventing

---

[5] As discussed in *Black*, there are few procedures for section 1226(c) detainees. "They include no mechanism for a detainee's release, nor for individualized review of the need for detention. The only procedural protection in place is the *Joseph* hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention. *See Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999); *Black*, 103 F.4th at 152.

aliens from 'remain[ing] in the United States in violation of our law.'") (quoting *Demore*, 538 U.S. at 518). "Enforcement of our immigration law serves both a domestic law enforcement and foreign relations function." *See Rodriguez Diaz*, 53 F.4th at 1208 (citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). Those "legitimate interests justify" the "relatively short-term deprivation of liberty" Petitioner has experienced to date. *See Black*, 103 F.4th at 154.

## **CONCLUSION**

For the reasons stated herein, the Petition should be denied.

Dated: Central Islip, New York
May 29, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
*Attorney for Respondents*
610 Federal Plaza
Central Islip, New York 11722

By: */s/ Alina Austin*
Alina Austin
Special Assistant United States Attorney
(631) 715-7834
alina.austin@usdoj.gov