**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JING LIN,<br><br>Petitioner,<br><br>– against –<br><br>KENNETH GENALO, Field Office Director of New York Immigration and Customs Enforcement; TODD LYONS, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Acting Attorney General of the United States,<br><br>Respondents. | Civil Action No. 26-cv-2536 (GRB)<br><br>**PETITIONER'S REPLY TO RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE WRIT OF HABEAS CORPUS [DE 13]** |

## INTRODUCTION

Respondents' defense rests on a mistaken premise: that Jing Lin ("Petitioner") was arrested for *completed* third-degree grand larceny under N.Y. Penal Law § 155.35(1) and therefore could be detained categorically under the Laken Riley Act ("LRA"), 8 U.S.C. § 1226(c)(1)(E). DE 13 at 5–8. The incident report's attempt designation, criminal counsel's affirmation, and certified disposition establish that the charge was *attempted* grand larceny under N.Y. Penal Law §§ 110.00 and 155.35(1). DE 7-1 at 1; Pet.'s Ex. A, Affirmation of Kevin J. Keating, Esq. (Oct. 27, 2026) ("Keating Aff."), ¶ 2; Pet.'s Ex. B, Certificate of Disposition (Oct. 28, 2026) ("Disposition"), at 1. The detective's report expressly states that the complainants suffered no monetary loss. DE 7-1 at 4. That statement corroborates the records identifying the charge as attempted, rather than completed, grand larceny. *Rueda Torres v. Francis* expressly holds that attempted New York larceny falls outside the LRA. No. 25 Civ. 8408 (DEH), 2025 WL 3168759, at *6 (S.D.N.Y. Nov.

13, 2025). Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1226(a), yet Respondents never exercised the detention discretion afforded by that provision. This error illustrates why meaningful initial custody process mattered. Respondents treated an erroneous statutory classification as eliminating discretion altogether.

Six months later, the criminal case has concluded through reductions to disorderly conduct under N.Y. Penal Law § 240.20(7), without a larceny conviction. Keating Aff. ¶ 10; Disposition at 1. Petitioner admitted none of the conduct originally alleged. Keating Aff. ¶ 10. Disorderly conduct is a violation—not even a "crime" under New York law, which defines that term as a misdemeanor or felony. N.Y. Penal Law §§ 10.00(3), (6), 240.20.

Thus, the Court should order immediate release.

## STATEMENT OF FACTS

Petitioner entered the United States without inspection in 2018.

On April 28, 2026, Freeport police issued Petitioner a Desk Appearance Ticket for attempted grand larceny in the third degree. DE 14-3. The incident report likewise identifies the offense as classification "E" and includes the designation "ATT T." DE 7-1 at 1. The detective's report states that the complainants suffered no monetary loss. DE 7-1 at 4. Respondents themselves described the incident as an "attempted theft of $18,000.00." DE 7 at 1. ICE took Petitioner into custody that afternoon. DE 14 ¶¶ 9–13.

Although the District Attorney knew from the outset that Petitioner was in ICE custody, he was not produced for arraignment on May 15, June 26, July 22, or July 27. Keating Aff. ¶¶ 3–8. The courthouse also closed because of a fire on July 22, although no production writ had been obtained for that date. *Id.* Petitioner was finally arraigned on October 8, more than five months after his arrest. *Id.*

On October 27, 2026, the criminal case concluded with Petitioner's plea to disorderly conduct under N.Y. Penal Law § 240.20(7), in full satisfaction of the accusatory instrument. Keating Aff. ¶ 10. The certified disposition records the reduction of attempted grand larceny to attempted petit larceny and then to disorderly conduct, with a sentence of time served on the violation alone. Disposition at 1. Petitioner admitted none of the conduct originally alleged; he admitted only that he had engaged in disorderly conduct. Keating Aff. ¶ 10. Disorderly conduct is a noncriminal violation under New York law. N.Y. Penal Law §§ 10.00(3), (6), 240.20.

Petitioner has been in removal proceedings since 2019, charged only as present without admission under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). DE 14 ¶¶ 6–7; DE 14-1. On June 26, 2026, the immigration judge denied asylum and withholding of removal. Petitioner timely appealed to the Board of Immigration Appeals on July 17, 2026, and that appeal remains pending.

Petitioner has remained in immigration custody for six months, including confinement at Brooklyn MDC, Delaney Hall in Newark, New Jersey, and, since October 7, 2026, the Nassau County Correctional Center. DE 14 ¶¶ 9–15. Throughout that period, Petitioner has been confined under the same conditions as criminal detainees, deprived of his liberty, separated from his community, and unable to work or resume his ordinary life.

Respondents have produced no Form I-286 or equivalent contemporaneous record demonstrating an individualized exercise of detention discretion under § 1226(a). Instead, they have maintained that mandatory detention under the LRA dispenses with any assessment of danger or flight risk. DE 7; DE 13 at 6–9. No officer, immigration judge, or court has assessed whether Petitioner's detention is necessary because he presents either risk. Petitioner has never been convicted of a crime. DE 1 ¶ 19; Keating Aff. ¶ 10; Disposition at 1.

## ARGUMENT

### I. The LRA authorized neither Petitioner's initial detention for attempted larceny nor his continued mandatory detention after resolution of those charges.

The LRA reaches a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" an enumerated offense, as defined by the law of the state where the acts occurred. 8 U.S.C. § 1226(c)(1)(E)(ii), (c)(2). None of these applies to Petitioner.

### A. The LRA did not authorize mandatory detention from the outset because the actual charge was *attempted* larceny.

Section 1226(c)(1)(E) requires both specified inadmissibility and a qualifying criminal predicate. Petitioner's challenge concerns the latter. Section 1226(c)(2) expressly incorporates the meanings of the listed offenses in the jurisdiction where the acts occurred. New York law therefore governs.

New York larceny requires that a person, with the requisite intent to deprive or appropriate, wrongfully take, obtain, or withhold another's property. N.Y. Penal Law § 155.05(1). An *attempt* separately requires intent to commit a crime and conduct tending to effect its commission. *Id.* § 110.00. Completed grand larceny under § 155.35 is a Class D felony; its *attempt* is a Class E felony under § 110.05(6). The distinction is the offense's elements, not whether Class E is sufficiently serious or whether violence occurred.

*Rueda Torres* addresses the precise issue: "the statute does not mandate detention for attempted offenses." *Rueda Torres v. Francis*, No. 25 Civ. 8408 (DEH), 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025), *appeal withdrawn sub nom. Torres v. Genalo*, No. 26-115, 2026 WL 1091200 (2d Cir. Apr. 15, 2026). In New York, "[a] person is guilty of grand larceny in the third degree when he steals property and . . . [t]he value of the property exceeds three thousand dollars."

N.Y. Penal Law § 155.35(1). Section 155.05, titled "Larceny; defined," states that "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully *takes, obtains or withholds* such property from an owner thereof." *Id.* § 155.05(1) (emphasis added). Thus, an essential element of larceny is the actual taking, obtaining, or withholding of another's property. Petitioner's charge alleged only *attempted* grand larceny under N.Y. Penal Law §§ 110.00 and 155.35(1), which falls short of satisfying that essential element of the completed offense. Keating Aff. ¶ 2; Disposition at 1. Although the higher intended value distinguishes the degree of the intended larceny, it does not supply the missing element of a completed taking.

As *Rueda Torres* explained, if Congress intended to mandate detention for attempted forms of the listed crimes, it easily could have done so. 2025 WL 3168759, at *6 (citing *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014)). *Maynard* applied the "rule of statutory construction *inclusio unius est exclusio alterius*—that to express or include one thing implies the exclusion of the other," reasoning that Congress's express identification of circumstances permitting restitution excluded circumstances not listed. 743 F.3d at 379. The same reasoning applies here: Congress enumerated larceny but did not include attempted larceny. Accordingly, as in *Rueda Torres*, Petitioner's attempted-larceny charge did not subject him to mandatory detention under § 1226(c)(1)(E).[1]

Petitioner's only conviction is for disorderly conduct under N.Y. Penal Law § 240.20(7), a "violation," not a "crime" under New York law. N.Y. Penal Law §§ 240.20, 10.00(3), (6);

[1] *Rivera Guzman v. Arteta* reinforces that distinction. No. 26 Civ. 2808 (DEH), 2026 WL 1045920, at *4–5 (S.D.N.Y. Apr. 16, 2026). The court held that New York possession of stolen property did not qualify as theft or larceny merely because it appeared within a statutory title addressing theft-related offenses. Its elements lacked the required taking. *Id.* The analysis turns on the actual state offense, not association with an enumerated crime.

Disposition at 1. That offense requires neither a wrongful taking, obtaining, or withholding of another's property nor an intent to deprive the owner of it—the essential elements of larceny. N.Y. Penal Law § 155.05(1). The disposition therefore supplies no conviction for an offense enumerated in § 1226(c)(1)(E).

Nor can Respondents rely on the statute's separate admission provisions. Petitioner's allocution was limited to confirming that he had engaged in disorderly conduct; he admitted neither the original allegations nor conduct establishing the essential elements of larceny.[2] Keating Aff. ¶ 10. Respondents have invoked no other ground under § 1226(c). Their asserted basis for mandatory detention therefore fails independently of the conclusion that attempted larceny never triggered the LRA.

**B. Independently, the resolution of all larceny charges defeats continued mandatory detention.**

Even if the initial arrest could support Respondents' characterization, no larceny charge remains pending. The prosecution resolved the case through reductions to disorderly conduct, not a conviction for completed or attempted larceny. Disposition at 1. There is now no pending enumerated charge, qualifying conviction, or admission to the original conduct. Keating Aff. ¶ 10. Thus, even on Respondents' original premise, the subsequent disposition independently defeats their asserted basis for continuing mandatory detention.

Courts have declined to apply the LRA's mandatory-detention provision where the predicate charges have been dismissed or resulted in acquittal and no other statutory basis for mandatory detention remains. In *Sidqui v. Almodovar*, the court explained that "the text of §

[2] See *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025), where the court explained: "This means, for example, that a person who pleads guilty to 'criminal mischief' after being charged with 'theft' will remain subject to mandatory detention if the underlying factual admissions are sufficient to meet the elements of theft." Here, Petitioner made no such factual admissions. Keating Aff. ¶ 10.

1226(c)(1)(E)(ii) does not provide for mandatory detention where, as here, charges have been dropped." 823 F. Supp. 3d 364, 388 (S.D.N.Y. 2026) (quoting *Rueda Torres*, 2025 WL 3168759, at *5). "In defining the scope of the obligation to detain, Congress used the present tense '*is* charged with,' as opposed to '*was* or *has been* charged.' ... Had Congress intended to make detention mandatory for anyone who *was* charged with larceny, it certainly knew how." (emphasis in original) (internal quotation marks omitted)). *Id.*[3]

As noted in *Rivera Guzman*, "any interpretation of Section 1226(c) that required detention following an arrest or bringing of charges would 'make the words "is convicted of" superfluous,' as no defendant could possibly proceed to a conviction without first being charged." The court further explained: "Thus, while detention is mandatory immediately following an arrest, it is no longer required if charges are ultimately not filed. Similarly, detention remains mandatory if charges are filed, but it is no longer required if a person is acquitted. Any other interpretation would render superfluous the language in the statute requiring detention under circumstances other than when a person 'is arrested for' or 'is charged with' certain crimes." 2026 WL 1045920, at *3.

**II. Respondents' statutory error displaced the required initial custody process, and belated administrative proceedings do not remedy the ongoing violation.**

Absent a qualifying LRA predicate, Petitioner's detention is governed by § 1226(a), not by § 1225(b), because he was arrested in the interior and is not subject to an administratively final

---

[3] The court further cited *E.C. v. Noem*, No. 25-CV-01789, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) (determining that § 1226(c)'s "statutory text's reference to a person who 'is charged with' or 'is arrested' for a theft-related offense, in the present tense, cannot be read to apply to a person has previously been arrested for and charged with a crime where they have also been acquitted of the crime" and noting that mandatory detention in such circumstances would "violate [the noncitizen's] due process rights"); and *Helbrum v. Williams Olson*, No. 25-CV-00349, 2025 WL 2840273, at *1 (S.D. Iowa Sept. 30, 2025) ("After charges are dismissed, it is no longer accurate to say that a person 'is charged with' theft (present tense). Accordingly, Petitioner is not subject to mandatory detention [under § 1226(c)(1)(E)] merely because he was charged with a crime (past tense) that has now been dismissed with prejudice."). *Sidqui,* 823 F. Supp. 3d 364, 389.

order of removal. *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, No. 26-104 (U.S. Oct. 1, 2026).

Section 1226(a) authorizes detention as an exercise of discretion: the government "may continue to detain" or "may release" a noncitizen pending a removal decision. 8 U.S.C. § 1226(a)(1)–(2); see 8 C.F.R. § 236.1(c)(8). This Court recognized the corresponding due process requirement in *Clarke v. U.S. Department of Homeland Security*, No. 25-CV-6773 (GRB), 2025 WL 3674471, at *8–9 (E.D.N.Y. Dec. 18, 2025): "before or contemporaneous with detaining a noncitizen, there must be a custody determination," and a § 1226(a) detainee "who identifies some defect in the process governing her detention can raise that defect in a habeas action seeking release." *Id.* at *8 (quoting *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025)). Even the check-box custody notice in *Clarke* failed to establish whether detention resulted from an exercise of discretion or a mandatory policy, or what information informed that decision. *Id.*[4]

Here, Respondents' erroneous application of mandatory detention resulted in no individualized custody determination at all. They have held Petitioner for six months under mandatory-detention theories invoking §§ 1225(b) and 1226(c), yet have produced no Form I-286 or equivalent contemporaneous record demonstrating an exercise of discretion under § 1226(a). See DE 14; DE 14-1 through DE 14-7. They have not identified who made the initial custody decision, when, on what grounds, or with what opportunity for Petitioner to respond. The defect is

[4] In *Kelly v. Almodovar*, No. 25 Civ. 6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025), the Court concluded that "the mere 'review' of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness." The Court further explained that "[i]f ICE wishes to detain a noncitizen under the detention authority provided by 8 U.S.C. § 1226(a), ICE must allow the noncitizen to 'demonstrate to the satisfaction of the officer that [ ] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Id.* (citing 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021)). See also *Terrero v. Tsoukaris,* No. 26-CV-00869 (NCM), 2026 WL 607917, at *3 (E.D.N.Y. Mar. 4, 2026).

not merely a missing form: it is the absence of the process necessary to protect against erroneous detention, creating an exceptionally high risk of erroneous deprivation of liberty. *Mathews v. Eldridge,* 424 U.S. 319, 333–35 (1976).[5]

Both mandatory-detention theories have now failed, and no individualized discretionary determination stands in their place. Respondents litigation position cannot substitute for an actual exercise of discretion. Nor can they remedy its absence by requiring Petitioner to remain confined while seeking his first meaningful determination through procedures designed to review an existing one. As this Court recognized in *Clarke*, "a bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance." 2025 WL 3674471, at *9 n.16 (quoting *Gopie*, 2025 WL 3167130, at *3)[6].

A belated bond hearing cannot cure Respondents' failure to make an individualized determination when they first deprived Petitioner of his liberty. As *Sidqui* explained, providing a hearing months into detention "is no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." 823 F. Supp. 3d at 396 (citations omitted). Here, Respondents' erroneous invocation of mandatory detention displaced that process altogether, leaving Petitioner confined for six months without an individualized assessment of danger or flight risk.

Nor should Petitioner be required to exhaust administrative remedies before obtaining relief for that deprivation. His claim challenges the constitutionality of continued confinement

---

[5] As the Court explained in *Sidqui v. Almodovar,* 823 F. Supp. 3d 364, 391 (S.D.N.Y. 2026), an assertion that detention is mandatory is "precisely the opposite of an exercise of discretion, which entails some sort of judgment." (quoting *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 494–95 (S.D.N.Y. 2025)).
[6] See *Kelly*, 2025 WL 2381591, at *3; *Terrero*, 2026 WL 607917, at *3; *Valdez v. Joyce*, No. 25-CV-4627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025); *Hernandez v. Jamison,* No. 2:26-cv-07606-WB, ECF No. 9, at 4 (E.D. Pa. Oct. 9, 2026)

without a lawful initial custody determination. As *Sidqui* recognized, "[n]either an immigration judge nor the BIA has jurisdiction to adjudicate constitutional issues." *Id.* (citation omitted). The court therefore granted habeas relief without requiring exhaustion, emphasizing the absence of individualized process before or contemporaneous with detention and the Government's inability to identify evidence of danger or flight risk. *Id.* Here, Respondents likewise cannot substitute their continued assertion of mandatory detention for the individualized exercise of discretion they never undertook.

Respondents cannot rely on the availability of a *Joseph* hearing to cure the deprivation of liberty caused by their failure to provide timely, individualized custody process. That hearing addresses statutory classification, not the resulting due process violation. *Black v. Decker,* 103 F.4th 133, 152 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black,* 146 S. Ct. 2733 (2026), *cert. dismissed*, 2026 WL 2752021 (U.S. Sept. 16, 2026). Respondents have consistently maintained throughout this proceeding that detention is mandatory. DE 7 at 1–2; DE 13 at 5–8. Requiring Petitioner to contest that same position administratively while remaining confined would therefore be futile as a remedy for the constitutional deprivation and would only prolong it.

**CONCLUSION**

For these reasons, Petitioner respectfully requests that the Court:

a. Grant the Petition under 28 U.S.C. § 2241 and order Petitioner's immediate release;

b. Declare that Petitioner's detention is governed by 8 U.S.C. § 1226(a) and that neither § 1225(b) nor § 1226(c) authorizes mandatory detention on the present record;

c. Enjoin Respondents from re-detaining Petitioner without first moving before this Court to demonstrate compliance with all applicable statutory, regulatory, and

constitutional requirements, including notice and an opportunity to be heard at a pre-deprivation hearing before a neutral decisionmaker, with Respondents bearing the burden of establishing lawful grounds for detention;

d. Enjoin Respondents from denying bond on mandatory-detention grounds under § 1225(b) or § 1226(c), absent a material change in relevant circumstances consistent with the Court's decision, and from invoking the automatic stay under 8 C.F.R. § 1003.19(i)(2) if bond is granted;

e. ***Alternatively,*** promptly conduct a judicial bail hearing under *Mapp v. Reno,* 241 F.3d 221 (2d Cir. 2001), and require Respondents to justify continued detention by clear and convincing evidence;

f. Retain jurisdiction to enforce the Court's order and review any proposed re-detention, and grant such other relief as the Court deems just and proper.

Dated: New York, New York
October 30, 2026

Respectfully submitted,

/s/ Ling Li
Ling Li, Esq. (NY Bar No. 5016423)
Law Offices of Ling Li, P.C.
9 Mott Street, #301
New York, New York 10013
(212) 566-2064
liling.esq@gmail.com
*Attorney for Petitioner Jing Lin*

cc: Alina Austin, Special Assistant U.S. Attorney (via ECF)